248 F.3d 931 (9th Cir. 2001)
 CHARLOTTE LAUGHON, Plaintiff-Appellant,
v.
INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, MOVING PICTURE TECHNICIANS, ARTISTS & ALLIED CRAFTS OF THE UNITED STATES AND CANADA, Defendant-Appellee.
 No. 99-15812
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 15, 2000
Filed April 30, 2001
 
 Roderick P. Bushnell, Bushnell, Caplan & Fielding, San Francisco, California, and Linda J. Sloven, San Francisco, California, for the plaintiff-appellant.
 David Adelstein and Robert A. Bush, Geffner & Bush, Burbank, California, for the defendant-appellee.
 Appeal from the United States District Court for the Northern District of California. Susan Yvonne Illston, District Judge, Presiding. D.C. No. CV-98-01277-SYI.
 Before: J. Clifford Wallace, Raymond C. Fisher and Johnnie B. Rawlinson, Circuit Judges.
 OPINION
 FISHER, Circuit Judge:
 
 
 1
 Charlotte Laughon appeals the district court's dismissal of her discrimination claim against the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists & Allied Crafts of the United States and Canada ("IATSE" or "the International").[1] After she was not permitted to join Local 16 of IATSE ("Local 16"), she sued both Local 16 and IATSE alleging sex discrimination and unlawful retaliation. The district court found that her claim was properly directed against Local 16, but not against the International itself. On appeal, Laughon argues that Local 16 was acting as an agent of IATSE, rendering IATSE liable as a principal for Local 16's discriminatory conduct. We conclude that Local 16 was not acting as an agent of the International; thus, the International is not vicariously liable for Local 16's actions. Moreover, IATSE did not have actual or constructive notice of Laughon's allegations -- either through Local 16's business manager, who also served as an International vice president, or otherwise -- and did not have an affirmative duty to seek out and eradicate discriminatory conduct by the officers of Local 16.
 
 BACKGROUND
 A. IATSE and Local 16
 
 2
 IATSE is an international union with over 500 chartered local unions and 95,000 members. Local 16 is a chartered local of IATSE. Under Article 19 of the IATSE constitution, a chartered local maintains "the authority to exercise full and complete control over its own affairs" and the power to elect its own officers. Local 16 also has the right to hire its own employees and adopt its own procedures to accept new members. These powers are granted subject to a duty to comply with the IATSE constitution and bylaws. Local 16 negotiates its own collective bargaining agreements with employers without IATSE assistance or supervision. In this respect, Local 16 differs from many other IATSE locals.
 
 
 3
 In the event a local violates the IATSE constitution and bylaws or engages in any conduct deemed corrupt or otherwise reflecting poorly upon IATSE, IATSE may discipline the local. Forms of discipline include a fine, trusteeship or revocation of a charter. The International president is also empowered to suspend or revoke a local's charter and assume trusteeship over the local in the event of an emergency. During the period relevant to this dispute, IATSE never took such action with respect to Local 16.
 
 
 4
 Under Article 19, section 11 of the IATSE constitution, locals are to notify the International president "whenever any action or proceeding in a court or tribunal is brought by or against a local union or its members . ." IATSE President Thomas Short has interpreted this provision as not applying to National Labor Relations Board, Equal Employment Opportunity Commission ("EEOC") or Department of Fair Employment and Housing ("DFEH") charges.
 
 
 5
 IATSE is governed by a general executive board ("GEB") composed of the International president, International general secretary-treasurer and 11 International vice presidents. The International vice presidents exercise power over the functioning of a local only insofar as they vote on matters concerning the local that come before the GEB. No such matters concerning the membership practices of Local 16 came before the Board at any time relevant to this litigation.
 
 B. Edward Powell
 
 6
 Appellee Edward Powell has served as an International Vice President of IATSE since 1971. From 1963 to January 1994 he also served as business manager of Local 16, a position analogous to chief executive officer of the local. Powell maintains that his duties as vice president were completely distinct from his duties as Local 16 business manager. Laughon's initial allegations of discrimination focused in large part on Powell's conduct.
 
 C. Charlotte Laughon
 
 7
 Appellant Laughon works in the movie and television industry as a set dresser, set decorator and props assistant. She moved to the San Francisco Bay Area in 1991 and thereafter made repeated attempts to join Local 16 of IATSE. Each of these attempts was rebuffed. Laughon alleges that in August 1992 she wrote a letter to Powell about joining Local 16, and forwarded a copy of the letter to the IATSE president. She spoke with Powell in October 1992 and asked if she could join Local 16. He allegedly misled her about the membership requirements and made sexist comments to her. When she visited the Local 16 office again on December 30, 1992 to inquire about the status of a sexual harassment claim she had filed against a member of Local 16, she asked again about the possibility of joining Local 16. Powell allegedly spoke to her in a raised voice and another Local 16 officer allegedly pushed her out of the office. Laughon claims she contacted IATSE several times after this visit about her difficulties gaining membership to Local 16, but never received a response. She alleges that she had four or five conversations with IATSE organizer Dale Paule during 1993 and 1994 about the problems she encountered in attempting to join Local 16.
 
 
 8
 Laughon claims that she had a telephone conversation in early 1995 with IATSE President Short, during which she told him of her efforts to join Local 16. He asked her to put her comments in writing, but she declined to do so. Short does not recall the conversation but avers that even if it took place, he would have waited until he received a written complaint before pursuing it with Local 16. Laughon's subsequent attempts to speak with Short in 1997 were unsuccessful.
 
 
 9
 Laughon filed a charge with the EEOC June 2, 1993, in which she complained that Local 16 had discriminated against her by refusing her membership in the local because of her sex, failed to respond when she complained of sexual harassment from a Local 16 member and retaliated against her for complaining about the discrimination. She received a determination from the EEOC March 27, 1997 that her allegations were meritorious. Thereafter, she filed several discrimination complaints with the DFEH March 16, 1998, received immediate right-to-sue notices for each and initiated this litigation March 30, 1998.
 
 D. Procedural Status
 
 10
 The district court granted IATSE's motion for summary judgment April 5, 1999. Laughon filed her appeal April 21, 1999. On July 13, 1999, the court granted partial judgment in favor of IATSE under Fed. R. Civ. P. 54(b), providing jurisdiction for this appeal under 28 U.S.C. 1291. Laughon subsequently settled her case against the Local.
 
 STANDARD OF REVIEW
 
 11
 We review de novo a grant of summary judgment. Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir. 2000). Viewing the evidence in the light most favorable to the non-moving party, and drawing all reasonable inferences in her favor, we must determine whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact. Berry v. Valence Tech., Inc., 175 F.3d 699, 703 (9th Cir. 1999).
 
 DISCUSSION
 A. Agency
 
 12
 Laughon contends that Local 16 was acting as an agent of the International in discriminating against women, thus making IATSE liable for Local 16's violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. Common law agency principles determine whether such a relationship exists between an international and one of its locals. See Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 216, 62 L. Ed. 2d 394, 100 S. Ct. 410 (1979) (applying the common law agency test to determine whether an international was liable for an unauthorized strike by its local); Berger v. Iron Workers Reinforced Rodmen Local 201, 269 U.S. App. D.C. 67, 843 F.2d 1395, 1427-28 (D.C. Cir. 1988) (applying the Carbon Fuel test in the context of a Title VII action); Shimman v. Frank, 625 F.2d 80, 97-98 (6th Cir. 1980). Thus, if the local engages in illegal conduct in furtherance of its role as an agent of the international, the international will be liable for the local's actions. See Carbon Fuel, 444 U.S. at 217. However, if the local exercises considerable autonomy in conducting its affairs, it cannot be regarded as an agent of the international, and the international accordingly cannot be held liable under an agency theory for the local's actions. See Shimman, 625 F.2d at 97-98.
 
 
 13
 In determining the existence of an agency relationship, the terms of the international's constitution may be instructive, but we must also look to the actual relationship between the local and the international. "What should matter is not so much the International's theoretical control over the local as the nature and extent of actual control." Shimman, 625 F.2d at 98 n. 36; see also United States v. Int'l Union of Petroleum & Indus. Workers, 870 F.2d 1450, 1453-54 (9th Cir. 1989); Berger, 843 F.2d at 1430-31. To analyze the actual relationship, we consider the local's election of its own officers, ability to hire and fire its own employees, maintenance of its own treasury and independent conduct of its daily business as determinative factors. See Childs v. Local 18, Int'l Bhd. of Elec. Workers, 719 F.2d 1379, 1382 n.2 (9th Cir. 1983).
 
 
 14
 Within the framework outlined above, the record shows that Local 16 acted with a considerable degree of autonomy. Local 16 was authorized to control its daily affairs, elect its own officers, hire its own employees and establish its own membership procedures, so long as none of these activities conflicted with the IATSE constitution and bylaws. The IATSE general secretary-treasurer screened applicants admitted to Local 16, but rejection at this stage usually resulted because the applicant had sought admission to the wrong local (based on location or type of work).[2] Local 16 was free to establish its quarterly membership fees, subject to a minimum amount set by IATSE. Moreover, Local 16 negotiated its own collective bargaining agreements without oversight from the International. IATSE never revoked Local 16's charter or assumed trusteeship over it during the period relevant to this dispute. Because the circumstances that would support an inference of agency are absent, we hold that the IATSE structure and operations in practice did not create an agency relationship between the International and Local 16.
 
 B. Notice
 
 15
 Laughon argues that the International had notice of Local 16's discriminatory activity, and therefore had an obligation to launch an investigation. Its failure to do so, she contends, amounts to tacit ratification of the conduct. The record contains no evidence of such notice.
 
 
 16
 Laughon sent a letter to Powell dated August 27, 1992, in which she complained of her inability to find work in the Bay Area. She sent a copy of the letter to the IATSE president. Even liberally construed, however, this letter does not complain of gender discrimination. It describes Laughon's difficulties finding employment in the Bay Area, says that the Local 16 employees with whom she spoke were unhelpful and asks for clarification about her employment eligibility. Nowhere in the letter does Laughon allege that her difficulties resulted from gender-based animus.[3] Accordingly, the International cannot be held liable for failure to initiate an investigation.
 
 
 17
 Laughon also alleges that she had several discussions in 1993 and 1994 with International organizer Paule about her difficulties joining Local 16 and about an incident in which a Local 16 member sexually harassed her on a movie set where both were working. She does not allege that she told Paule she had been excluded from Local 16 because of her sex.[4] She claims to have had a similar conversation with IATSE President Short in 1995. Again, she complained of the harassment incident and her inability to join the local, but did not tell Short that her exclusion from Local 16 was based on discriminatory animus. During this conversation, Laughon alleges, Short asked her to put her complaint in writing and send it to him. As her counsel admitted at oral argument, she never did so.
 
 
 18
 Laughon was unable to contact Short in 1997. After Laughon received the EEOC's determination that her complaint against Local 16 was meritorious, Debbie Reid, Short's assistant, asked Laughon to send a copy of the determination to the International.[5] This conversation took place in November or December 1997. Short received the EEOC determination and, on December 15, 1997, responded by sending a copy of it to Local 16 Secretary F.X. Crowley and requesting information from him about the dispute. Short contends that when Laughon filed the instant action on March 30, 1998, he had not yet received any response from Local 16. Given that Short was informed of the EEOC determination less than four months before Laughon filed suit and promptly initiated an investigation, we cannot say on these facts alone that IATSE should be found liable due to inaction. Laughon has not shown that the International had actual notice of her complaint before receiving the EEOC determination or that it unreasonably delayed its investigation and response. Therefore, she is not entitled to relief for the International's failure to respond to her allegations in a more timely fashion.
 
 
 19
 Even if the International had no actual notice, Laughon argues that it had constructive notice by virtue of Powell's knowledge of her complaint and his simultaneous positions as business manager of the Local and as a vice president of the International. She contends that Powell's notice should be imputed to the entire IATSE governing board.[6] In making this argument, Laughon essentially relies on the fortuity of Powell having a seat on the board, as she did not take any steps to bring her discrimination charges to IATSE's attention until late 1997.
 
 
 20
 The International is not liable for ratifying Local 16's discrimination merely because Powell did not volunteer the existence of the charges against him. Courts analyzing the actions of an individual who serves simultaneously as a local and an international official look to the organization being served at the time of the allegedly objectionable conduct. They do not impute the conduct, or knowledge of the conduct, to the international solely by virtue of the individual's double role. See Shimman, 625 F.2d at 98-99; Chapa v. Local 18, 737 F.2d 929, 932-33 (11th Cir. 1984). Here, Powell's allegedly discriminatory conduct -- refusing to allow Laughon to join the Local, making sexist remarks to her when she discussed membership with him, yelling at her on another occasion when she approached him at the Local 16 offices to discuss membership and providing her with false information about membership requirements -- occurred while he was acting solely on behalf of Local 16. The International had no power over the local's decisions to reject applicants. The fact that Powell had a seat on the International's governing board and simultaneously discriminated on behalf of the local is insufficient to render the International liable for his local actions.
 
 C. Affirmative Duty
 
 21
 Finally, Laughon contends that the International had an affirmative duty to seek out and eradicate discriminatory conduct by its locals. She relies upon language from Kaplan v. International Alliance of Theatrical & Stage Employees, 525 F.2d 1354 (9th Cir. 1975), to support this proposition.
 
 
 22
 Kaplan involved a suit against IATSE and another of its locals. At the time, and unlike the circumstances here, the International was the exclusive bargaining representative for all of its locals. See id. at 1357. We held the International liable for violating Title VII in Kaplan because it had negotiated and enforced a collective bargaining agreement that perpetuated the effects of earlier sex discrimination. Id. at 1360. The court then noted in dictum that the International had a duty to "closely scrutinize the practice of its local affiliates to reveal discriminatory acts or consequences." Id.
 
 
 23
 As explained in Carbon Fuel, decided after Kaplan, the common law agency test applied to internationals is a middle ground between, on the one hand, liability for actions by any person acting in the international's interest and, on the other, liability only when clear proof of the international's actual participation in or authorization or ratification of illegal acts is before the court. See Carbon Fuel, 444 U.S. at 217 & n. 6 (noting that, in establishing the common law agency test through 301 of the Labor Management Relations Act, Congress chose a middle ground between the National Labor Relations Act's loose test and the Norris-LaGuardia Act's restrictive one). Under this test, Laughon must show the existence of an agency relationship between IATSE and Local 16, something she has not done. To the extent the Kaplan dictum indicates that IATSE had an affirmative duty to seek out evidence of discrimination in each of its locals absent a high degree of involvement in a local's activities or awareness of its actions, such a requirement was squarely abrogated in Carbon Fuel. Accordingly, we must reject Laughon's affirmative duty argument.
 
 CONCLUSION
 
 24
 Appellant Laughon was unable to demonstrate that Local 16 was an agent of the International. Nor did she show that the International failed to act upon receiving notice of her allegations of discrimination. The district court's grant of summary judgment in favor of the International was therefore proper.
 
 
 25
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 Victoria Lewis, whose appeal had been consolidated with Laughon's, stipulated to a dismissal of her case with prejudice. See Order, Nov. 16, 2000.
 
 
 [2]
 Thomas Short, general secretary-treasurer from February 1993 to December 1994 and IATSE president from December 1994 through the time of the suit, claims never to have rejected an application based on the applicant's sex.
 
 
 [3]
 The letter concludes:
 I am confused by the conflicting information I have received. Please set the record straight and write to me at the address above explaining:
 (1) whether my membership in Local 44 [another IATSE local, based in Los Angeles, of which Laughon became a member in September 1991] makes me eligible to work on union productions in the San Francisco area, and
 (2) if not, then which specific I.A.T.S.E. rules prohibit me from doing so.
 (3) Finally, please also inform me whether I am eligible to join Local 16, and if that would improve my chances at finding employment here.
 
 
 [4]
 In her declaration, Laughon summarized her contact with Paule as follows: "I told him about the problem that I was having with Local 16 and that I was sexually harassed on a set. I reiterated every time I spoke with him that I was not allowed to work in the Bay Area because I was not a member of the union."
 
 
 [5]
 Apparently Laughon did not comply with Reid's request. Short received a copy of the determination only after the AFLCIO sent it to a representative of IATSE on December 5, 1997.
 
 
 [6]
 Powell retired from Local 16 in January 1994. Thus, he was on notice of Laughon's discrimination complaint filed June 2, 1993, but did not have constructive notice of her subsequent complaints.